UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HOWARD I. GINSBURG, as Administrator
of the Estate of Bradley Marc Ginsburg,

                    Plaintiff,

        -vs-                              5:11-CV-1374

CITY OF ITHACA; CORNELL UNIVERSITY;
DAVID J. SKORTON, Individually and as
President of Cornell University; SUSAN H.
MURPHY, Individually and as an employee
of Cornell University; TIMOTHY C. MARCHELL,
Individually and as an employee of Cornell
University; and GREG EELLS, Individually and
as an employee of Cornell University,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

OFFICE OF LELAND T. WILLIAMS        LELAND T. WILLIAMS, ESQ.
Attorneys for Plaintiff
95 Allens Creek Road, 1-107
Rochester, NY  14618

LAW OFFICES OF THERESA G. PULEO    DAVID TWICHELL, ESQ.
Attorneys for the Defendant City of Ithaca
441 South Salina Street
Syracuse, NY  13202

OFFICE OF UNIVERSITY COUNSEL        NELSON E. ROTH, ESQ.
Attorneys for the Defendants Cornell University;  VALERIE L. DORN, ESQ.
    David J. Skorton; Susan H. Murphy;
    Timothy C. Marchell; and Greg Eells
300 CCC Building
Garden Avenue
Ithaca, NY 14853


DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

On November 21, 2011, plaintiff Howard I. Ginsburg ("plaintiff" or "Ginsburg") filed this action as the administrator of the estate of his son, Bradley Marc Ginsburg ("Bradley"). Plaintiff filed an amended complaint on December 8, 2011, against the City of Ithaca ("Ithaca"); Cornell University ("Cornell"); David J. Skorton, President of Cornell; Susan H. Murphy, Vice President for Student and Academic Services at Cornell; Timothy C. Marchell, Director of Mental Health Initiatives at Cornell ("Marchell"); and Greg Eells, Director of Counseling and Psychological Services at Cornell ("Eells").[1]  Plaintiff brings a total of fourteen causes of action alleging various theories of negligence that allegedly caused the pain/suffering and wrongful death of his son.  Plaintiff seeks punitive damages from the individual defendants.

Ithaca and the Cornell defendants have each answered the amended complaint and filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment pursuant to Rule 56.  Plaintiff opposes the motions and has cross-moved for leave to supplement the pleadings pursuant to Rule 15(a)(2).[2]  Discovery has been stayed pending the resolution of these motions.  As this action

---

[1] Subject matter jurisdiction is based on the complete diversity of the parties.  Plaintiff is a Florida resident, and all defendants are residents of New York.

[2] Plaintiff seeks to supplement the amended complaint with the report from the forensic analysis of Bradley's computer, public statements made by some defendants, and additional articles—some authored by defendants, most published after Bradley's death—that discuss the dangers presented by Ithaca's and Cornell's bridges.  Plaintiff appears to request this relief only if the amended complaint would not survive defendants' motions.

was filed less than four months ago and meaningful discovery has not yet taken place, the defendants' requests to convert the motions into summary judgment motions will be denied.

Oral argument was held on March 13, 2012, in Utica, New York. Decision was reserved.

## II. **FACTUAL BACKGROUND**

The following facts, taken from the amended complaint and documents incorporated by reference thereto, are assumed true for purposes of the motions for judgment on the pleadings. On February 17, 2010, Bradley—an eighteen-year-old Cornell freshman—jumped to his death from the Thurston Avenue Bridge near the Cornell campus in Ithaca. This particular bridge is highly traveled as it connects the area where Cornell freshmen live to the main academic area of the campus. Bradley crossed this bridge on a daily basis. The bridge is owned by Ithaca, but Cornell exerts "extensive control" over its design, safety, and operation. Am. Compl. ¶ 21.

Between 1990 and 2010, twenty-nine people attempted suicide by jumping from the seven bridges located on or near the Cornell campus. Twenty-seven of these attempts were successful, and fifteen of the people who died were Cornell students.[3] This history of suicides prompted community leaders and victims' families to call for the implementation of suicide prevention measures on all bridges in the area. In 2006–2007 Ithaca and Cornell jointly redesigned and reconstructed the Thurston Avenue Bridge but only raised and curved the side railings.

---

[3] The parties do not identify how many of these incidents involved the Thurston Avenue Bridge.

During the fall 2009 semester—the semester immediately preceding Bradley's death—three Cornell students committed suicide on or near the campus.[4]  The Cornell defendants covered up these suicides and did not notify the students or their parents, thereby preventing concerned parents from checking on the welfare of their children.

Plaintiff served a timely notice of claim on Ithaca.  On November 3, 2011, Ginsburg was deposed at a hearing held pursuant to General Municipal Law section 50-h.

### III. DISCUSSION

Generally, Ginsburg alleges defendants were negligent by failing to implement adequate suicide prevention measures on the Thurston Avenue Bridge.  Defendants assert that they are entitled to judgment on the pleadings because:  (1) they did not have a duty to prevent Bradley's suicide, which was unforeseeable; (2) the Thurston Avenue Bridge was reconstructed in 2006–2007 after an adequate safety study and was not in a dangerous or defective condition; (3) Bradley's suicide was an independent, superseding act that cut off any liability on defendants' part; and (4) the amended complaint fails to state a claim against the individual Cornell defendants.

#### A. Judgment on the Pleadings—Legal Standard

The standard for granting a motion for judgment on the pleadings pursuant to Rule 12(c) is "identical" to that of a 12(b)(6) motion to dismiss.  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the

---

[4] Plaintiff's opposition/cross-motion indicates that these three students did not jump from bridges. Bradley was apparently the fourth of six Cornell students to commit suicide during the 2009–2010 school year and the first of three to do so by jumping from a bridge.

speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S. Ct. 1937, 1950 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

When deciding a motion to dismiss, a district court may consider documents attached to the complaint as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Even if a document is not incorporated by reference, a court may nevertheless consider it "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (internal quotation marks omitted). However, even if the document is integral, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (internal quotation marks omitted).

### B. Duty and Foreseeability

Plaintiff alleges that defendants had a duty—under premise liability—to design, construct, and maintain the Thurston Avenue Bridge in a reasonable manner to guard

against suicides.

"A landowner has a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition." In re Kush v. City of Buffalo, 59 N.Y.2d 26, 29, 449 N.E.2d 725, 727 (1983). "[A] landowner may be held liable to a plaintiff for harm suffered—even where the plaintiff engages in a voluntary activity—if the landowner (a) had actual or constructive knowledge that injurious conduct was likely to occur or recur, and (b) fails to control that conduct despite the opportunity to do so." Lloyd v. Alpha Phi Alpha Fraternity, No. 96-CV-348, 1999 WL 47153, at *4 (N.D.N.Y. Jan. 26, 1999) (Scullin, J.). However, "a person who lacks ownership or control of property cannot fairly be held accountable for injuries resulting from a hazard on the property." Galindo v. Town of Clarkstown, 2 N.Y.3d 633, 636, 814 N.E.2d 419, 422 (2004).

It is undisputed that Ithaca, not Cornell, owns the Thurston Avenue Bridge. Instead, Ginsburg alleges that Cornell has "extensive control" over the operation of the bridge, held it out as its own, and interacted with the architects, engineers, and contractors to finalize the redesign plans and oversee the reconstruction of the bridge in 2006–2007. Am. Compl. ¶ 21. The amended complaint also references a recent article indicating that current proposed redesigns of area bridges will be "submitted to both the Cornell Trustees and the City of Ithaca for approval." Id. Therefore, plaintiff has sufficiently alleged that, although Cornell may not legally own the bridge, it controls its design and operation. Further discovery is warranted to determine the extent of Cornell's control over the bridge. Accordingly, for purposes of this motion, plaintiff's assertion that Cornell and Ithaca jointly controlled and maintained the bridge is accepted as true, and any duty owed will be ascribed to both

entities.

The parties agree that Bradley did not exhibit any outward signs of depression or suicidal ideation prior to his death. Defendants thereby conclude that his suicide was unforeseeable, absolving them of any liability. However, the possibility that Bradley in particular would commit suicide is irrelevant. It was clearly foreseeable that <u>someone</u> may commit suicide by jumping off the Thurston Avenue Bridge. Indeed, twenty-nine people had jumped from area bridges since 1990. Ginsburg alleges that this particular bridge had earned a dubious reputation for suicide attempts, and he identifies an article in which defendant Marchell acknowledged that safety measures are necessary to prevent people from impulsively jumping off bridges in the area.[5]  <u>See</u> <u>id</u>. ¶ 27. Further, defendant Eells estimated that up to fifteen percent of Cornell students contemplate suicide "on a pretty regular basis." <u>Id</u>. ¶ 20. In short, the history of suicides and suicide attempts, defendants' public acknowledgment of the phenomenon, and the bridge's accessibility to a student population—fifteen percent of which regularly considers suicide—shows defendants had actual, or at least constructive, knowledge that a suicide attempt from the bridge was foreseeable.

As alleged in the amended complaint, as owner and controller of the Thurston Avenue Bridge, defendants had a duty to maintain that property in a reasonably safe condition to prevent foreseeable suicides.

---

[5] The exact date this article was originally published is unknown. The article was "last updated" on April 14, 2011, after Bradley's suicide. <u>See</u> Williams Aff., Ex. A. Nonetheless, it suggests defendants were aware of the ongoing risk of suicide attempts from the area bridges.

- 7 -

### C. Unreasonably Dangerous Condition

Plaintiff alleges that defendants failed to take reasonable steps to prevent the foreseeable suicide attempts from being successfully carried out by failing to install adequate safeguards on the bridge.  Plaintiff claims defendants had an opportunity in 2006–2007 when they jointly redesigned and reconstructed the bridge but failed to do so.  Defendants argue that the negligence claims must be dismissed because they had fulfilled the above duty when the Thurston Avenue Bridge was redesigned and reconstructed in 2006–2007 after a thorough safety study and in compliance with all federal and state standards.  Again, at this early stage of the litigation, plaintiff's allegation that the bridge was still in a dangerous condition in the face of a foreseeable risk that students would continue to attempt suicide from area bridges must be credited.  Clearly, the redesign and reconstruction did not prevent Bradley from jumping off the bridge.  Further, the case on which Ithaca relies to support its assertion of municipal immunity went to trial before it was determined that due care was exercised in the planning and design of an intersection controlled by traffic lights.  See Weiss v. Fote, 7 N.Y.2d 579, 586 (1960).

It is premature to determine, as a matter of law, that the Thurston Avenue Bridge was not in an unreasonably dangerous condition in February 2010.  Therefore, plaintiff has sufficiently set forth facts in the amended complaint that defendants knew suicides were likely to occur or recur on the area bridges but failed to take reasonable measures to prevent such conduct despite an opportunity to do so.

### D. Independent, Superseding Act

Defendants maintain that Bradley's affirmative act of jumping from the bridge was an

intervening, superseding act that cut off any liability on their part.

An interruption of the connection between a plaintiff's injury and a defendant's negligence will "relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant." In re Kush, 59 N.Y.2d at 33, 449 N.E.2d at 729.  "Where, however, the intervening act is a natural and foreseeable consequence of a circumstance created by defendant, liability will subsist." Id.

As noted above, defendants' duty was to maintain the Thurston Avenue Bridge in a reasonably safe condition as to prevent suicides.  In fact, one of the purposes of the 2006–2007 redesign and reconstruction of the bridge was to fulfill that obligation.  Thus, Bradley's affirmative act of jumping from the bridge cannot be considered extraordinary or unforeseen.  See id. (when the intervening act "is itself the foreseeable harm that shapes the duty imposed, the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs").

Accordingly, Bradley's act of jumping from the bridge was not a superseding act that cut off all liability from defendants.

### E.  Individual Cornell Defendants

The individually-named Cornell defendants maintain that they must be dismissed because the amended complaint fails to state a cause of action against them.  A review of the pleadings reveals few conclusory allegations against these defendants.  The only factual allegation against them is that they were aware of the history of suicides and knew affirmative measures needed to be implemented to prevent future successful attempts.

There is nothing in the amended complaint, documents incorporated therein, or plaintiff's section 50-h testimony from which a reasonable inference can be drawn implicating the individual defendants in the design, construction, or maintenance of the Thurston Avenue Bridge.

Moreover, even though defendants Marchell and Eells hold administrative positions in the mental health and psychological departments at Cornell, it is undisputed that Bradley never sought or received counseling services. In short, there is nothing to suggest the individual defendants had control over the bridge or that they—or their departments—ever had any contact with Bradley.

Further, plaintiff's argument that these defendants assumed an "in loco parentis" relationship over Cornell students by covering up the cluster of three suicides in the fall 2009 semester is unpersuasive. "New York has affirmatively rejected the doctrine of in loco parentis at the college level." Luina v. Katharine Gibbs Sch. N.Y., Inc., 37 A.D.3d 555, 556 (N.Y. App. Div. 2d Dep't 2007); Eiseman v. State, 70 N.Y.2d 175, 190, 511 N.E.2d 1128, 1136 (1987). Therefore, the individual defendants did not have a duty to Bradley under this doctrine.

Accordingly, claims against the individual Cornell defendants will be dismissed. As a result, the fourteenth cause of action for punitive damages will also be dismissed. There is no claim for punitive damages against Ithaca or Cornell.

## IV. **CONCLUSION**

Plaintiff has sufficiently alleged that Ithaca and Cornell owned and/or controlled the Thurston Avenue Bridge and thus had a duty to maintain that property in a reasonably safe

condition to prevent foreseeable suicides.  Plaintiff has also adequately alleged that Ithaca and Cornell failed to fulfill that duty when they did not implement appropriate suicide prevention measures on the bridge despite having an opportunity to do so when the bridge was redesigned and reconstructed in 2006–2007.  However, plaintiff has failed to state a claim against the individual Cornell defendants, who neither controlled the bridge nor interacted with Bradley.

Therefore, it is

ORDERED that

1.  The defendants' request to convert the motions for judgment on the pleadings into motions for summary judgment is DENIED;

2.  The defendants' motions for judgment on the pleadings is GRANTED in part and DENIED in part;

3.  All claims against defendants David J. Skorton, Susan H. Murphy, Timothy C. Marchell, and Greg Eells are DISMISSED and their names shall be removed from the caption;

4.  The Fourteenth Cause of Action is DISMISSED;

5.  All causes of action against defendants the City of Ithaca and Cornell University are NOT DISMISSED; and

6.  Plaintiff's cross-motion to supplement the pleadings is DENIED as moot.

IT IS SO ORDERED.

Dated: March 15, 2012
       Utica, New York.

United States District Judge